**FILED**

Charlotte, NC

JUL 2 2 2026

Clerk, US District Court
Western District NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:26-cr-154-KDB |
| | ) | **BILL OF INDICTMENT** |
| v. | ) | |
| | ) | 18 U.S.C. § 1341 |
| LINDA FAYE HOUGH | ) | 18 U.S.C. § 287 |
| | ) | 18 U.S.C. § 2 |

## THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

### INTRODUCTION

1. From no later than January 2024 through at least October 2024, LINDA FAYE HOUGH devised and executed a scheme to fraudulently obtain funds from the Discrimination Financial Assistance Program ("DFAP" or the "Program"), a federal program administered by the United States Department of Agriculture ("USDA"), both personally and on behalf of other applicants located in the Western District of North Carolina and elsewhere.

2. HOUGH submitted and caused to be submitted false, fictitious, and fraudulent DFAP applications on behalf of herself and other applicants in an attempt to obtain Program funds. HOUGH submitted and caused to be submitted DFAP applications that resulted in the disbursement of more than $9 million in Program funds to HOUGH and other applicants that she assisted.

### DEFENDANT AND APPLICANTS

3. HOUGH was a resident of Rockingham, North Carolina.

4. The applicants that HOUGH assisted were located in Anson County, within the Western District of North Carolina, and elsewhere.

### THE DISCRIMINATION FINANCIAL ASSISTANCE PROGRAM

5. The USDA was an agency of the United States responsible for administering various financial assistance programs to farmers, ranchers, and forest landowners of the United States.

6. The DFAP was established by Section 22007 of the Inflation Reduction Act (the "Act"). Through the Act, Congress allocated $2.2 billion for the Program and directed the USDA to provide financial assistance to farmers, ranchers and forest landowners who experienced discrimination in USDA farm lending programs prior to January 2021. USDA designed the

1

Program in accordance with the Act and opened the application process in or around July 2023. The application deadline closed on or about January 17, 2024.

7. The Act required DFAP to be administered through qualified nongovernmental entities subject to standards set and enforced by USDA. USDA contracted with entities to serve as national administrator and regional hubs, to conduct outreach, assist with the financial assistance application process, operate regionally based offices, manage program call centers, and process applications. The national administrator oversaw the Program, including reviewing individual applications, making determinations of eligibility and evaluating the application against USDA-approved standards, using corroborating data from the USDA where available.

8. The DFAP was available to farmers and "potential producers." The "potential producer" category referred to applicants who "would have operated a farm or ranch if they had received a loan through a USDA farm loan program." The application included sections on Program eligibility (ownership of farmland, lease of farmland, or potential producer), farm lending participation or attempted participation, discrimination, and losses. The types of discrimination covered by the Program included race, color, national origin/ethnicity, sex, religion, and age, amongst others.

9. DFAP applicants submitted their applications online, by hand, or by mail to a DFAP Regional Office for processing. Applicants were required to provide information to substantiate that they owned or leased farmland or would have operated farmland if they had received a USDA farm loan, that they participated or attempted to participate in a USDA farm loan program, and statements/declarations describing acts of discrimination by USDA employees that caused a loss.

10. A DFAP award could not exceed $500,000 per person. Payments for approved applications were determined based on certain factors evaluated by USDA and its affiliates. Once the USDA, via the claims administrator, approved the DFAP claim, a United States Treasury check was issued to the applicant, which was deposited in the United States mail and authorized depository for United States mails and would be sent and delivered through the United States mails to the applicant at the address provided in the application.

## THE FRAUD SCHEME

11. HOUGH devised a scheme to defraud the USDA and obtain money by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material information, and for the purpose of executing the scheme to defraud, caused DFAP applications to be placed into the United States mail and authorized depository for mail matter, to be delivered to a DFAP Regional Office.

12. It was a part of the fraudulent scheme that HOUGH knowingly submitted, and caused to be submitted, DFAP applications on behalf of herself and applicants that contained boilerplate materially false statements and misrepresentations regarding Program eligibility (including false statements regarding farmland ownership and leases), USDA farm lending participation or attempted participation, discrimination, and losses, and that concealed material

2

information about the applicants. HOUGH caused materially false and fraudulent DFAP applications to be mailed to a DFAP Regional Office, which in turn caused those applications to be approved and United States Treasury checks to be issued and mailed to the applicants through the U.S. Postal Service.

13. It was part of the fraudulent scheme that after the applicants received DFAP funds, HOUGH would frequently solicit and receive kickback payments from them.

14. The fraudulent DFAP applications frequently contained identical false and fraudulent claims regarding the discrimination purportedly faced by the applicants. For example:

   a. On or about January 12, 2024, HOUGH assisted A.I. in submitting a false DFAP application through the U.S. Postal Service. Specifically, A.I.'s application falsely represented that:

      i. A.I. leased 95 acres of farmland;

      ii. A.I. attempted to apply for a USDA farm operating loan but was refused an application because she was a black female; and that

      iii. As a result of the USDA discrimination, A.I. lost 95 acres of land.

      iv. Below is an excerpt of A.I.'s fraudulent DFAP application:

> I went to USDA on May 1978 and Applied for a farm operating loan and the front desk receptionist told me that no funds were available. She refused to give me a Application because I was black.

      In truth and in fact, as HOUGH well knew, A.I. was not entitled to DFAP funds. As a result of the application, on or about July 29, 2024, the USDA issued, and mailed, a U.S. Treasury check in the amount of $500,000 to A.I.

   b. On or about January 16, 2024, HOUGH assisted M.C. in submitting a false DFAP application through the U.S. Postal Service. Specifically, M.C.'s application falsely stated that:

3

i.     M.C. leased 75 acres of farmland; and

ii.    M.C. attempted to apply for a USDA farm operating loan but was refused an application because she was a black female.

iii.   Below is an excerpt of M.C.'s fraudulent DFAP application:



In truth and in fact, as HOUGH well knew, M.C. was not entitled to DFAP funds. As a result of the application, on or about July 29, 2024, the USDA issued, and mailed, a U.S. Treasury check in the amount of $500,000 to M.C.

c.   On or about January 12, 2024, HOUGH assisted A.D. in submitting a false DFAP application through the U.S. Postal Service. Specifically, A.D.'s application falsely stated that:

i.     A.D. leased 95 acres of farmland;

ii.    A.D. attempted to apply for a USDA farm operating loan but was refused an application because he was a black male; and that

iii.   As a result of the USDA discrimination, A.D. lost 95 acres of land.

iv.   Below is an excerpt of A.D.'s fraudulent DFAP application:

4

Describe the steps you took to try to get a loan.

I went to USDA on May 1974 and apply fara farm loan and the Front Desk Receptianptst told me that no funds were availiable she Refused to give me a Application because I was Black

In truth and in fact, as HOUGH well knew, A.D. was not entitled to DFAP funds. As a result of the application, on or about July 29, 2024, the USDA issued, and mailed, a U.S. Treasury check in the amount of $500,000 to A.D. After receiving the funds, A.D. paid HOUGH a kickback of approximately $25,000.

d. On or about January 12, 2024, HOUGH assisted S.M. in submitting a false DFAP application through the U.S. Postal Service. Specifically, S.M.'s application falsely stated that:

    i. S.M. leased 62 acres of farmland;

    ii. S.M. attempted to apply for a USDA farm operating loan but was refused an application because she was a black female; and that

    iii. As a result of the USDA discrimination, S.M. lost 62 acres of land.

    iv. Below is an excerpt of S.M.'s fraudulent DFAP application:

5

I Went to USDA on May 1981 and apply for a farm Operating Loan, and the [strikethrough] Front Desk Receptionist told me that No funds were Available, She Refused to give me an application because I was black.

In truth and in fact, as HOUGH well knew, S.M. was not entitled to DFAP funds. As a result of the application, on or about July 29, 2024, the USDA issued, and mailed, a U.S. Treasury check in the amount of $500,000 to S.M. After receipt of the funds, S.M. paid HOUGH a kickback of approximately $1,500.

## COUNT ONE
### 18 U.S.C. § 1341
### (Mail Fraud Scheme)

15. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 14 of the Bill of Indictment, and further alleges that:

16. From no later than January 2024 through at least October 2024, in Anson County, within the Western District of North Carolina, and elsewhere, the defendant,

### LINDA FAYE HOUGH,

aided and abetted by others known and unknown to the Grand Jury, with the intent to defraud, did knowingly and intentionally devise and intend to devise the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice to defraud, did knowingly cause to be delivered by mail according to the direction thereon certain DFAP applications.

All in violation of Title 18, United States Code, Section 1341.

## COUNTS TWO THROUGH SIX
### 18 U.S.C. § 287
### (False, Fictitious or Fraudulent Claims)

17. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 14 of the Bill of Indictment, and further alleges that:

18. On or about the dates set forth below, each such date constituting a separate count, in Anson County, within the Western District of North Carolina and elsewhere, the defendant,

6

**LINDA FAYE HOUGH,**

aided and abetted by others known and unknown to the Grand Jury, made and presented, and caused to be made and presented to the USDA, an agency of the United States, a claim upon the United States in the form of a DFAP application, knowing such claim to be false, fictitious, and fraudulent, as described in the chart below:

| Count | Approximate Date of Application | Applicant Name |
|---|---|---|
| TWO | January 12, 2024 | R.G. |
| THREE | January 12, 2024 | K.H. |
| FOUR | January 12, 2024 | L.D.S. |
| FIVE | January 12, 2024 | L.E.S. |
| SIX | January 16, 2024 | R.H. |

All in violation of Title 18, United States Code, Sections 287 and 2.

7

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

        a.      All property which constitutes or is derived from proceeds of the violations set forth in Counts One through Six of this Bill of Indictment; and

        b.      If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds set forth above: a forfeiture money judgment in the amount of approximately $9,275,650.00, such amount representing the proceeds of the fraud scheme set forth herein.

A TRUE BILL:

███████████████████████

FOREPERSON

RUSS FERGUSON
UNITED STATES ATTORNEY

_____
ERIC A. FRICK
SPECIAL ASSISTANT UNITED STATES ATTORNEY

8